IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TONIA KNIGHT ) | |
| o/b/o STARLIN KNIGHT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 1:05cv135-C |
| ) | |
| JO ANNE BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Tonia Knight filed this lawsuit on behalf of her son, Starlin Knight ("Starlin"), to review a final judgment by defendant Jo Anne Barnhart, Commissioner of Social Security, in which she determined that Starlin is not "disabled" and therefore, not entitled to supplemental security income benefits. Her application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The parties have consented to the undersigned United States Magistrate Judge rendering a final judgment in this lawsuit pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1. The court has jurisdiction over this lawsuit pursuant to 42 U.S.C. §§

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

405(g) and 1383(c)(3).  For the reasons that follow, the court concludes that the Commissioner's decision denying Starlin supplemental security income benefits should be affirmed.

## I. STANDARD OF REVIEW

In 1996, the President signed into law the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, which included a new standard for defining child disability under the Social Security Act.  *See* PUB. L. NO. 104-193, 110 Stat. 2105, 2188 (1996).  The revised statute provides that an individual under 18 shall be considered disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I) (1999).  The sequential analysis for determining whether a child claimant is disabled is as follows:

1. If the claimant is engaged in substantial gainful activity, he is not disabled.
2. If the claimant is not engaged in substantial gainful activity, the Commissioner determines whether the claimant has a physical or mental impairment which, whether individually or in combination with one or more other impairments, is a severe impairment.  If the claimant's impairment is not severe, he is not disabled.
3. If the impairment is severe, the Commissioner determines whether the impairment meets the durational requirement and meets, medically equals, or functionally equals in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  If the impairment satisfies this requirement, the claimant is presumed disabled.

*See* 20 C.F.R. § 416.924(a)-(d) (1997).

The Commissioner's regulations provide that if a child's impairment or impairments does not meet, or is not medically equal or functionally equivalent in severity to a listed impairment, the child is not disabled. *See* 20 C.F.R. § 416.924(d) (2003). In reviewing the Commissioner's decision, the court asks only whether his findings concerning the steps are supported by substantial evidence. *See Brown v. Callahan*, 120 F.3d 1133 (10th Cir. 1997). The ALJ considered all of the evidence available in the record before him and on the basis of that evidence concluded that Starlin is not disabled.

## II. DISCUSSION

Unfortunately, the plaintiff fails to specifically identify the issue presented for the court's resolution in this case.[2] Moreover, the plaintiff's brief is not a model of clarity, and it is difficult to ascertain exactly what legal issues are being raised in this court.[3]

---

[2] The plaintiff was specifically directed to include in her brief a "Statement of the Issues" and "***in numbered paragraphs***, . . . state in a ***concise, specific manner*** each issue which the plaintiff presents to the court for resolution." (Doc. # 5, p.2, ¶ 4) (emphasis in original) (footnote omitted). Because the plaintiff failed to follow the court's directive, the court has had to decipher the issues raised by the plaintiff. In so doing, the court is compelled to observe that in "presenting arguments to busy trial courts, subtlety is no virtue." *United States v. Reyes Vasquez*, 905 F.2d 1497, 1499 (11th Cir. 1990). Moreover, the failure of the plaintiff to properly identify the issue and applicable law in this case prompts the court to note that both clarity and preparation are virtues which should be sought by all advocates.

[3] The court provides several excerpts from the plaintiff's brief as illustrations.

This child's medical scenario is reflected in the medical records (R81-123). However, just as important to understanding the daily severely hampered and grossly restricted daily life of Starlin Knight is the testimony on the ALJ hearing, first at (R143-151) and continuing the examination of the mother by counsel at 152-154 (hereafter excerpted).
.   .   .

The totality of what was testified to at the hearing is supported by the examination and medical treatment of record rendered to the plaintiff from 1999 to the happenings at the said hearing there was presented a child with said severe disabling limitations resulting in a life with zero ability to with any normalcy whatsoever to function in any sphere of a child's world. He lived one dose of medication from such relapse of pneumonia. (R113).

3

Consequently, extrapolating from her brief, the court concludes that the plaintiff is arguing that the ALJ failed to properly consider the testimony of Starlin's mother, and thus, his decision is not based upon substantial evidence.[4]

After a hearing, the ALJ concluded that Starlin suffers from severe impairments of asthma and respiratory allergies. (R. 16, 19). Starlin was ten years old at the time of the hearing before the ALJ. (R. 151). Starlin has been treated at the Dothan Pediatric Clinic since 1999. (R. 122). On January 12, 1999, Starlin was diagnosed with a respiratory infection. (*Id*.) On February 8, 1999, Dr. Powell examined Starlin because he had a fever and cough and he was wheezing. (R. 120-21). Starlin was diagnosed with a lower respiratory infection and possible Restrictive Airway Disease. (*Id*.) Dr. Powell prescribed Zithromax and Albuterol Sulfate Syrup. (*Id*.)

On July 19, 2000, Starlin was seen by Dr. Buie who diagnosed him as suffering from pneumonia. (R. 119). He prescribed Zithromax and Maxitussin syrup. (*Id*). On August 2, 2000, Dr. Buie saw Starlin in a follow-up visit to check the status of his pneumonia. (R. 116). At that time, Dr. Buie noted that "Starlin seems to be doing well and has had no fever. His

---

.  .  .

> But as Jurist and Lawyers are cognizant visits on medical appointments help appraise in medical parlance something of the medical nature of a condition, i.e., of treatment, diagnosis, and prognosis,.

(Pl's Br. at 1-3).

[4] The plaintiff argues in brief that Starlin's mother's testimony "should have carried overwhelming weight" and her testimony is "crucial to understanding how these acknowledged severe conditions meet and surpass the criteria of Sections 1602 and 1614(a)(3)(e) of Title XVI of the Social Security Act." (Pl's Br. at 3 & 6).

4

activity and appetite have returned to normal. He still has a slight cough at times." (*Id.*). Dr. Buie opined that Starlin's pneumonia was resolved. (*Id.*)

On August 8, 2000, Starlin complained to Dr. Buie of chest pains and wheezing. (R. 114). Starlin also had a fever. (*Id.*) Dr. Buie diagnosed lower lobe pneumonia and bronchospasm. (*Id.*) He prescribed Proventil Syrup and Ceftin. (*Id.*) On August 22, 2000, Dr. Buie saw Starlin for a recheck of his pneumonia. (R. 113). At that time, Starlin was "doing fine and Mom has no concerns." (*Id.*)

On October 13, 2000, Dr. Buie saw Starlin. (R. 112). At that time, Starlin was complaining of some chest pain and wheezing. Dr. Buie diagnosed upper respiratory infection, prolonged, and wheezing. (*Id.*) Starlin was prescribed Proventil Syrup and Augmentin Syrup. (*Id.*)

On January 15, 2001, Starlin was seen by Dr. Buie because he had congestion, cough, sore throat, and headache. (R. 110). Starlin was diagnosed with a viral infection. (*Id.*)

On March 23, 2001, Starlin was seen for his seven-year check-up. (R. 108). At that time, he was assessed as being a "well child" with reactive airways disease/ periodic breath, upper respiratory infection and behavioral problems. (R. 109).

> Starlin is seen today for the 7 year EPSDT well child exam. He has been doing well. He has been using his inhaler almost daily. He has a lot of coughing. He also has been having lots of problems at school, being very active. Discipline is a big problem with him, both at school and at home. He is completing his school work, but is being very disruptive to the other class members.

(R. 108). He was prescribed Singulair chews. (*Id.*)

On October 30, 2002, Starlin was taken to Flowers Hospital, complaining of a cough

and cold.  He was treated for acute asthma exacerbation and released.  (R. 86-87).

Starlin was next seen on March 17, 2003, by Dr. Brown.  (R. 106).  At that time, Starlin was suffering from reactive airways disease/periodic breath and acute bronchitis.  (*Id*.)  He was prescribed Singulair oral tablets, Xopenex Inhalation Nebulization Solution and Zithromax Syrup.  (*Id*.)  Starlin returned to the Pediatric Clinic on March 21, 2003, complaining about chest pain during coughing.  His wheezing was also worsening.  Starlin was directed to stop using Albuterol and Xopenex.  (R. 104).  On March 25, 2003, Starlin was still experiencing chest pains.  (R. 102-103).  He was referred for a chest x-ray and EKG.  (R. 103).  The chest x-ray indicated that Starlin may be suffering from asthma.  (R. 123).  On April 22, 2003, Starlin was seen by Dr. Wiley complaining about episodic chest pain and trouble breathing.  (R. 100).  His medications were changed and a written asthma plan for home and school were implemented.  (R. 101).

On June 26, 2003, Dr. Wiley saw Starlin because he was wheezing.  (R. 97).  Dr. Wiley diagnosed asthma with exacerbation and changed Starlin's medication to better control his wheezing.  (R. 98).

On October 8, 2003, Starlin underwent allergy testing by Dr. Paul C. Motta.  (R. 133).  At that time, Starlin was allergic to various grasses, cat dander, dust and other plants.  (*Id*.)

The crux of this case is the ALJ's determination of the severity of Starlin's functional limitations.  In order to functionally equal a listing, Starlin's impairments must result in "marked" limitations in two or more functional domains or "extreme" limitation in one functional domain.  20 C.F.R. § 416.926a(a).  The ALJ was required to consider six areas of

6

development: Acquiring and using information; Attending and completing tasks; Interacting and relating to others; Moving about and manipulating objects; Caring for yourself; and Health and physical well-being.  (*Id*. at 416.926a(b)).  The ALJ concluded that Starlin had "no limitation" in the domains of acquiring and using information, attending and completing tasks, interacting and relating to others, moving about and manipulating objects, and self-care. (R. 17-18).  However, the ALJ found that Starlin "has marked limitation" in the area of health and well-being because he "experiences frequent exacerbation of respiratory symptoms and requires the use of prescription medication for control of such symptoms."  (R. 18). The ALJ reached the following findings and conclusions.

> When the claimant's functioning is compared to functioning of children who do not have impairments, there appears to be no significant drop-off regarding his overall physical and mental abilities.  The Administrative Law Judge has considered the combined effects of the claimant's impairments and has indicated functional limitations in the appropriate domains as described above.  The evidentiary record reflects that the claimant's illness has not produced severe limitation of functioning over an extended period of time.  There is no evidence of record to indicate that the claimant's treatment has adversely affected his ability to function over an extended period of time (at least a year), under circumstances where the treatment itself (*e.g.*., multiple surgeries) results in marked and severe functional limitations.
>
> Therefore, based on the entirety of the evidence in this matter, including the testimony of the claimant and his mother, the undersigned Administrative Law Judge has no alternative but to conclude that this claimant does not have either an impairment, or combination of impairments, which meets or equals the Listings, or that the functional limitations caused by such impairment or combination of impairments are the same as the disabling functional limitations of any listing and therefore, functionally equivalent to such listing (20 C.F.R. § 416.924).

(R. 19).

The plaintiff argues that, as Starlin's mother, her testimony should have "carried overwhelming weight." (Pl's Br. at p. 3). This argument does not withstand scrutiny. Under questioning, Starlin's mother testified that his problems began when he had pneumonia. (R. 145). However, she is able to get all of Starlin's medications for him which he takes on a regular basis. (R. 1146). Starlin is able to take his medication at school and school officials make sure he gets his medication on a daily basis. (R. 147). Moreover, Starlin is doing "fairly well" in school.[5] In addition, Starlin does chores at home including cleaning his room, washing dishes and cleaning up, provided he is not watching television. (R. 150-151). When asked to describe Starlin's limitations, his mother described his problems as follows.

> A: Mainly his, the problem is mostly when he goes outside. It's – he goes out into the grass, they have grass (INAUDIBLE). When he comes back in he usually has to have a breathing treatment. And after two or three breathing treatments then he still has problem breathing, then I have to take off work to come pick him up from school.
>     .   .   .
> A: ... Mainly when he, when he goes out he cannot stay out for a long period of time. If he goes out in the evening time after school then most of the time at night I have to give him a breathing treatment. He's allergic to grass in the yard, pecan trees, peanut dust, different kinds of mold, house mold, dust mites, dust in the house. I have to wash the sheets twice a week. Can't, no pets, we can't have any pets because he's very allergic to them.

(R. 152-153).

The mere fact that Starlin has allergies and cannot be outside for extended periods of

---

[5] The only class in which Starlin struggles is Math; he has an F. (R. 145). However, he is being tutored in that subject. (R. 149-50).

time is insufficient to support a finding that he has an extreme area of functioning sufficient to meet or equal a Listing.  Starlin's mother's testimony does not support a finding that Starlin has an "extreme" limitation in these or any other areas of functioning.  Her testimony does not support a finding that Starlin has more than a marked limitation in the area of health and physical well-being.  Thus, the ALJ's conclusion that Starlin does not have more than a "marked" impairment in the health and physical well-being area of functioning is supported by the record.  Consequently, the court concludes that the ALJ's decision is supported by substantial evidence and, thus, the decision of the Commissioner should be affirmed.

## CONCLUSION

The court has carefully and independently reviewed the record, and concludes that the decision of the Commissioner is supported by substantial evidence and should be affirmed. A separate final judgment will be entered.

Done this 26th day of September, 2005.

/s/Charles S. Coody
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE